## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| ALARM CONCEPTS, INC., on behalf of itself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY, and BOOZ ALLEN HAMILTON INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Alarm Concepts, Inc. brings this class action complaint against Defendants, the Internal Revenue Service (IRS), the U.S. Department of the Treasury, and Booz Allen Hamilton Inc., on behalf of itself and all others similarly situated, to seek redress for the unlawful inspections and disclosures of their confidential tax returns and return information. Alarm Concepts makes these allegations based on personal knowledge as to itself and on information and belief as to all other matters.

## INTRODUCTION

1.      For over a decade, the IRS and Treasury Department have known that their cybersecurity safeguards for protecting confidential taxpayer information are woefully inadequate. Federal auditors repeatedly flagged the weaknesses and recommended stronger safeguards. Yet time and again, they failed to act, leaving taxpayers' sensitive information vulnerable to unauthorized access and disclosure. Compounding these failures, Booz Allen, a consulting firm with billions in federal contracts, repeatedly failed to implement adequate safeguards of its own to

protect the confidential taxpayer information it had access to through its contracts with the IRS and Treasury Department.

2.      Those failures had catastrophic consequences. Between 2018 and 2020, Charles Edward Littlejohn—an employee of both Booz Allen and the IRS[1]—stole and leaked the confidential tax returns and return information of thousands of taxpayers, including Alarm Concepts and the putative class members. Littlejohn later pleaded guilty to disclosing that information without authorization in violation of 26 U.S.C. § 7213(a)(1). This case seeks redress against Defendants for the unlawful inspections and disclosures under 26 U.S.C. § 7431(a).

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under a federal statute, 26 U.S.C. § 7431(a), which authorizes suit in a federal district court for the unauthorized inspection or disclosure of a tax return or return information. The Court also has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 class members, the total amount in controversy exceeds $5 million, and at least one class member is diverse in citizenship from at least one defendant.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events or omissions giving rise to the claims occurred here.

---

[1] The Internal Revenue Manuals (IRM) define "[e]mployee" as "all IRS personnel," including "all contractors who have staff-like access." IRM § 10.5.5.1.6(2). "Staff-like access" means "when a contracted individual is granted access to IRS facilities or IRS systems, or has opportunity to be exposed to IRS information." *Id.* § 10.5.5.1.6(3); *see also, e.g.*, *id.* § 7.11.13.1.1(3); ("All IRS employees (including managers, executives[,] and *contractors*) are responsible for protecting the confidentiality and privacy of taxpayer information to which they have access." (emphasis added)).

5.     The IRS and Treasury Department, as the United States, are proper party defendants in this action and have waived sovereign immunity under 26 U.S.C. § 7431(a)(1).

**PARTIES**

6.     Plaintiff Alarm Concepts, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. In December 2024, Alarm Concepts received a letter from the IRS, pursuant to 26 U.S.C. § 7431(e), notifying Alarm Concepts that Littlejohn was charged in connection with the unauthorized inspection or disclosure of its tax returns or return information. The letter is attached as **Exhibit A**.

7.     Defendant U.S. Department of the Treasury is an executive-branch department of the federal government and oversees the IRS.

8.     Defendant the Internal Revenue Service is a bureau of the Treasury Department and is responsible for the administration and enforcement of the Internal Revenue Code.

9.     Defendant Booz Allen Hamilton Inc. is an American government and military contractor with over 35,000 employees. Booz Allen is incorporated in Delaware and headquartered in McLean, Virginia. Booz Allen provides consulting, analysis, and engineering services to public- and private-sector organizations and nonprofits, including the IRS and Treasury Department. As relevant here, from 2018 to 2021, Booz Allen performed information-technology (IT), cybersecurity, tax-administration, and other electronic-data services for the IRS under contracts with the Treasury Department and/or the IRS. The IRS granted Booz Allen access to IRS computers, networks, databases, and data-storage locations to enable Booz Allen to perform those services.

10.     Non-defendant Charles Edward Littlejohn is an individual who, upon information and belief, was jointly employed by Booz Allen and the IRS to work on Booz Allen's contracts

with the IRS and/or Treasury Department at various intervals from 2008 to 2021, including from 2017 to 2021.

11.    At all relevant times, Littlejohn was a Booz Allen employee. When Littlejohn rejoined Booz Allen in 2017, Booz Allen hired him as an associate in the finance and economic development practice to perform work under Booz Allen's contracts with the IRS and/or Treasury Department. Booz Allen issued Littlejohn a computer and credentials to access IRS systems and databases containing confidential tax returns and return information. Littlejohn's data analysis for the IRS was part of Booz Allen's regular business for work performed under contracts with the IRS and/or the Treasury Department.

12.    At all relevant times, Littlejohn was also an officer or employee of the United States by virtue of his employment with or for the IRS. The IRS issued Littlejohn an IRS laptop and an IRS.gov email address, and he had staff-like access to IRS systems, facilities, and confidential taxpayer information.[2] As Littlejohn's employer, the IRS maintained control over the detailed physical performance of his work. Indeed, the IRS (including its contracting officer representatives)[3] exercised extensive, detailed, day-to-day supervision over Littlejohn's work both at IRS facilities and on IRS data systems by, among other things: managing the scope and purpose of his daily tasks and projects; monitoring his technical performance; ensuring that he completed mandatory trainings, remained informed on data safeguards, and appropriately protected taxpayer information; and exercising control over the parameters of his access to IRS data and confidential

---

[2] Because he had staff-like access to IRS systems and facilities, Littlejohn falls squarely within the IRM's definition of "employee." *See* IRM § 10.5.5.1.6(2)–(3).

[3] Contracting officer representatives "are IRS employees who oversee day-to-day operations of contracts and contractors." U.S. Gov't Accountability Off., GAO-23-105395, *Security of Taxpayer Information: IRS Needs to Address Critical Safeguard Weaknesses* 35 (2023).

tax returns and return information, including those at issue here. Additionally, the IRS had the authority to reprimand Littlejohn and terminate his employment. According to the IRS, all IRS employees—that is, "all IRS personnel," which includes all contractors like Littlejohn "who have staff-like access"[4]—"may be subject to administrative penalties for the[ir] willful and unauthorized" attempts to access or disclose taxpayer records, including suspension and removal.[5]

13.    On information and belief, Littlejohn worked for the IRS and Booz Allen in Lanham, Maryland, at the IRS's New Carrollton Federal Building, which houses many of the IRS's IT functions.

## FACTUAL ALLEGATIONS

**I.    The IRS fails to establish appropriate safeguards to protect confidential tax returns and return information.**

14.    The IRS relies heavily on IT systems to collect, process, and maintain tax returns and return information. Yet as this reliance has grown, its cybersecurity protections have remained dangerously inadequate. By 2020, the U.S. Treasury Inspector General for Tax Administration (TIGTA) ranked "security over taxpayer data and protection of IRS resources as the number one major management and performance challenge area for the tenth consecutive year."[6]

15.    Year after year, the TIGTA documented the deficiencies in the IRS's safeguards. In 2018, for example, a TIGTA audit revealed 88 weaknesses in physical security controls and more than 1,700 improperly configured user accounts across IRS systems.[7] The TIGTA also found

---

[4] IRM § 10.5.5.1.6(2)–(3).

[5] *Id.* § 10.5.5.2(2).

[6] Treasury Inspector Gen. for Tax Admin., Report No. 2021-20-001, Annual Assessment of the Internal Revenue Service's Information Technology Program for Fiscal Year 2020 6 (2020) (cleaned up).

[7] Treasury Inspector Gen. for Tax Admin., Report No. 2018-20-034, Active Directory Oversight Needs Improvement and Criminal Investigation Computer Rooms Lack Minimum Security Controls 6, 14 (2018).

that the IRS used an outdated security-compliance checker that relied on three-year-old technical guidelines.[8] As a result, the TIGTA concluded "the IRS cannot ensure that sensitive taxpayer information and taxpayer dollars are preserved and protected."[9]

16.     Despite its annual audits, the TIGTA continued to find systemic failures by the IRS to establish appropriate safeguards for confidential taxpayer information. In 2020, for example, the TIGTA reported that the IRS had failed to use "encryption algorithms" required by federal standards for certain operating systems to keep confidential taxpayer information "unreadable for an unauthorized user."[10] The TIGTA further reported that two of the IRS's five "Cybersecurity Framework" function areas (identify, protect, detect, respond, recover) "were deemed as 'not effective.'"[11]

17.     The TIGTA also uncovered significant security deficiencies in the IRS system used to convert and store taxpayers' confidential tax documents and return information as electronic records of taxpayer data.[12] These deficiencies included more than 16,000 policy violations.[13] The TIGTA further found that the IRS improperly assigned business-role accounts to an administrator group, which granted those accounts unnecessary elevated privileges.[14] Compounding these issues, the IRS "lacked management oversight to ensure that [f]ederal and IRM requirements are met."[15] It also could not control access to a computer room and allowed "unnecessary traffic

---

[8] *Id.* at 13–14.

[9] *Id.* at 5.

[10] Report No. 2021-20-001, *supra* note 6, at 22.

[11] *Id.* at 9.

[12] Treasury Inspector Gen. for Tax Admin., Report No. 2020-20-006, Active Directory Oversight Needs Improvement 1–2 (2020).

[13] *Id.* at 12.

[14] *Id.* at 12–13.

[15] *Id.* at 6.

through this critical security area"—thereby increasing the risk of "unauthorized disclosure or theft of tax information."[16]

18.    To make matters worse, the TIGTA found that the IRS had failed to implement safeguards capable of even detecting unauthorized access to confidential tax return information. The TIGTA reported, for example, that "the IRS could not provide an accurate inventory of all applications that store or process taxpayer data and [personally identifiable information]."[17] And 91 percent of monitored applications provided either "incomplete and inaccurate audit trails" or no audit trails at all.[18] Moreover, the TIGTA reported in 2022 that the IRS's "[physical security] processes [did] not ensure that recommended minimum security countermeasures [were] tracked and considered."[19] Those processes were not effective, the TIGTA concluded, in large part "because the IRS [did] not consistently use a centralized system to track physical security countermeasure recommendations, approvals, implementation actions, and associated costs."[20]

19.    A 2023 report from the U.S. Government Accountability Office (GAO) also found weaknesses in how the IRS handles taxpayer data.[21] The report stated that as of March 2023, the IRS had failed to implement 77 of the GAO's recommendations for stronger safeguards.[22] The GAO identified the IRS's 14,000 contractor employees as a potential weakness, noting that a third

---

[16] *Id.*

[17] *See* Treasury Inspector Gen. for Tax Admin., Report No. 2020-20-033, Most Internal Revenue Service Applications Do Not Have Sufficient Audit Trails to Detect Unauthorized Access to Sensitive Information 3 (2020).

[18] *Id.* at *Highlights*.

[19] Treasury Inspector Gen. for Tax Admin., Report No. 2022-10-046, The Process for Tracking Physical Security Weaknesses Identified in IRS Facilities Does Not Ensure that Vulnerabilities Are Properly Addressed 6 (2022) (cleaned up).

[20] *Id.* at *Highlights*.

[21] *See* U.S. Gov't Accountability Off., *supra* note 3, at *Highlights*.

[22] *Id.* at 22–24.

of them failed to complete a training course on protecting taxpayers' records.[23] "As a result, IRS contractors [were] at increased risk of being unprepared to handle taxpayer information."[24]

20.    The IRS, along with other federal agencies, knew about these systemic data security deficiencies. Indeed, the federal government previously enlisted several contractors—including Booz Allen—to strengthen the IRS's cybersecurity protections.

## II.    Booz Allen secures billions in federal contracts for cybersecurity and tax-administration services.

21.    In 2018, Booz Allen won two lucrative federal contracts to enhance cybersecurity across the federal government. In February, the U.S. Department of Homeland Security awarded Booz Allen a six-year, $621 million contract to develop and implement its Continuous Diagnostics and Mitigation program, a government-wide cybersecurity initiative to monitor and protect federal networks. Later that year, Booz Allen secured a second, $1.03 billion contract for the same program—the largest federal task order and second-largest cybersecurity task order in Booz Allen's history at the time.

22.    This second contract tasked Booz Allen with developing cybersecurity capabilities and solutions for six federal agencies: the General Services Administration, Department of Health and Human Services, National Aeronautics and Space Administration, Social Security Administration, U.S. Postal Service, and the Treasury Department (including the IRS). In securing this contract, Booz Allen claimed to design continuous diagnostics and mitigation "solutions to help [a]gency leaders understand their attack surface, detect evolving threats, make informed risk-based decisions, and act quickly."[25] Booz Allen also touted its reputation as "the leading provider

---

[23] *Id.* at 30.
[24] *Id.* at *Highlights*.
[25] Press Release, Booz Allen Hamilton, *Department of Homeland Security Awards Booz Allen Hamilton $1.03 Task Order as Prime Contractor to Enhance Cybersecurity Capabilities*

of professional security services" and highlighted its commitment to "bring[ing] the best talent and most sophisticated tradecraft together to create innovative cyber solutions at an unprecedented scale."[26]

23.     In June 2023, Booz Allen announced another major IRS award. Booz Allen won a position on the IRS Enterprise Development, Operations Services contract, a blanket purchase agreement with a ceiling value of $2.6 billion. Under this contract, Booz Allen "supports the IRS's applications development portfolio to modernize mission-critical applications efficiently and cost-effectively, while implementing annual tax season legislative requirements."[27]

24.     Through these and other federal contracts, Booz Allen has performed cybersecurity, IT, and tax-administration services for the IRS. To enable Booz Allen to perform those services, the IRS and Treasury Department granted Booz Allen access to IRS databases and systems containing the tax returns and return information of American taxpayers, including Alarm Concepts. Booz Allen then gave its employees access to these databases and systems, supposedly to perform the contracted work.

## III.    Booz Allen fails to establish appropriate safeguards to protect confidential government data.

25.     Booz Allen markets itself as a global leader in cybersecurity technology and consulting, boasting "adversary insight, an innovative approach, and a deep understanding of advanced and vulnerabilities."[28] Yet Booz Allen has consistently failed to address its own

---

*Across Six Federal Agencies* (Aug. 21, 2018), https://investors.boozallen.com/news-releases/news-release-details/department-homeland-security-awards-booz-allen-hamilton-103b.
    [26] *Id.*
    [27] Press Release, Booz Allen Hamilton, *Booz Allen Wins Position on $2.6B IRS EDOS Contract* (June 27, 2023), https://www.boozallen.com/menu/media-center/q1-2024/booz-allen-wins-position-on-irs-edos-contract.html.
    [28] *Cybersecurity Services for Business and Industry*, Booz Allen Hamilton, https://www.boozallen.com/markets/commercial-solutions.html (last visited Jan. 21, 2025).

cybersecurity weaknesses, allowing employees and others to access, download, and disclose highly confidential government and company data.

26.    In July 2011, for example, the hacking group "Anonymous" infiltrated Booz Allen's network and stole over 90,000 military email addresses, encrypted passwords, and an assortment of data related to other companies and government networks. Anonymous also claimed that it deleted four gigabytes of Booz Allen's source code and that it discovered "maps and keys" for various federal agencies and contractors within the Booz Allen unsecured network.[29]

27.    After the breach, Anonymous posted a biting critique of Booz Allen's security measures: "In [Booz Allen's] line of work you'd expect them to sail the seven proxseas [sic] with a state-of-the-art battleship, right? Well you may be as surprised as we were when we found their vessel being a puny wooden barge. We infiltrated a server on [Booz Allen's] network that basically had no security measures in place."[30]

28.    Despite this breach, Booz Allen did little to improve its data security measures. To the contrary, it doubled down on its lax policies, repeatedly granting its employees unfettered and unmonitored access to both internal company servers and external federal networks, systems, and databases.

29.    This laxity paved the way for two of the most high-profile leaks in U.S. history. In 2013, Edward Snowden, a Booz Allen employee assigned to the National Security Agency (NSA), used his Booz Allen credentials and access to download thousands of NSA files. Snowden fled the

---

[29] Suzanne Choney, *Anonymous Shares 90,000 Military Email Addresses* (July 11, 2011), https://www.nbcnews.com/tech/tech-news/anonymous-shares-90-000-military-email-addresses-flna122080.

[30] Andy Greenberg, *Anonymous Hackers Breach Booz Allen Hamilton, Dump 90,000 Military Email Addresses*, Forbes (July 11, 2011), https://www.forbes.com/sites/andygreenberg/2011/07/11/anonymous-hackers-breach-booz-allen-hamilton-dump-90000-military-email-addresses/.

country and leaked top-secret documents to journalists, exposing national secrets about the U.S. intelligence surveillance system. Snowden has been in exile in Russia for over a decade, and Vladimir Putin granted him Russian citizenship in 2022.

30.    In 2016, just three years after the Snowden leak, authorities arrested Booz Allen employee Harold Martin for stealing 50 terabytes of NSA data. According to the government, Martin spent more than two decades pilfering secret documents and hoarding them in his home and vehicle. Among the classified materials allegedly stolen was a top-secret document "regarding specific operational plans against a known enemy of the United States and its allies."[31] Martin ultimately pleaded guilty to one count of willful retention of national defense information.

31.    Another significant breach occurred the following year. In 2017, investigators uncovered that Booz Allen had left over 60,000 sensitive U.S. military files on a publicly accessible Amazon cloud server for at least three months. The exposed files contained passwords to critical U.S. government systems and the security credentials for a senior Booz Allen engineer. The files were connected to a project for the U.S. National Geospatial-Intelligence Agency, the U.S. Department of Defense agency that deals with satellite and drone surveillance imagery.

32.    In November 2022, Booz Allen announced yet another major data breach. It said that an employee had downloaded a report containing the personally identifiable information of all "active employees as of March 29, 2021" from the company's internal network.[32] The report contained each employee's name, social security number, compensation, gender, race, ethnicity,

---

[31] Tal Kopan, *Feds: NSA Contractor's Secrets Theft 'Breathtaking'*, CNN (Oct. 20, 2016), https://www.cnn.com/2016/10/20/politics/nsa-contractor-alleged-classified-theft-harold-martin/index.html.

[32] *Booz Allen Says Former Staffer Downloaded Employees' Personal Data*, TechCrunch (Nov. 18, 2022), https://techcrunch.com/2022/11/18/booz-allen-employee-data-exposed/.

date of birth, and U.S. government security clearance and eligibility status. Booz Allen later revealed that this report "was improperly stored on an internal SharePoint site."[33]

33.     Defendants' systemic data security failures ultimately led to the catastrophic leak by IRS and Booz Allen employee Littlejohn.

**IV.     Defendants access and disclose the confidential tax returns and return information of thousands of taxpayers without authorization.**

34.     When Littlejohn returned to work for the IRS and Booz Allen in 2017, he arrived with a plan: to access and leak the tax returns and return information of President Donal Trump and other high-net-worth individuals. Littlejohn viewed Trump as a threat to democracy and believed the U.S. tax system was inequitable, with the wealthy evading taxes and receiving unfair advantages. Based on prior experience, Littlejohn knew that he could easily access unmasked taxpayer data on an IRS database. And he intended to use that access to steal and publicly disclose the tax returns and return information associated with Trump and other high-net-worth individuals.

35.     On information and belief, Booz Allen was aware of Littlejohn's strong political views and should have known of his intent to exploit his access to IRS systems and databases to promote those views by publicly disclosing the tax information of wealthy Americans. Even so, Booz Allen chose not to monitor Littlejohn's activities.

36.     Throughout Littlejohn's employment, all Defendants had a legal obligation to maintain adequate safeguards and oversight to protect the confidential tax returns and return information stored on the IRS database from unauthorized inspection and disclosure. Yet, without restriction or supervision by any of his employers, Littlejohn began using Defendants' systems and databases to extract confidential tax returns and return information of thousands of taxpayers.

---

[33] https://oag.ca.gov/system/files/BAH%20-%20Consumer%20Notification%20Template%20-%20CA.PDF.

37.     In November 2018, Littlejohn used his staff-like access to the IRS's database to access the tax returns and return information of Trump, along with other related individuals and entities. To avoid detection, Littlejohn carefully crafted his search queries on the IRS database. Instead of directly searching the database for Trump's taxpayer data—a move that could have triggered scrutiny—Littlejohn ran broader queries designed to capture Trump's tax returns indirectly. These queries also pulled tax returns and return information for other entities and individuals into the resulting data set.

38.     The next hurdle was extracting the data from the IRS database without detection. Littlejohn learned that the IRS protocols could detect and block large downloads from its systems and devices, but he found a way around them. Using a work computer, Littlejohn uploaded the tax returns and return information to a private website he controlled. He then used a personal computer to download the data from that website. Once he had the original data set stored on his personal computer, Littlejohn copied it onto other personal devices, including an Apple iPod that he configured to function as a portable hard drive.

39.     Neither the IRS nor Booz Allen had adequate controls in place to detect or stop this data breach.

40.     About six months later, around May 2019, Littlejohn contacted The New York Times to discuss potentially providing the newspaper with Trump's tax return data. Later that year, between August and October, Littlejohn disclosed an initial set of Trump's tax records to The New York Times. In 2020, Littlejohn stole additional tax returns and return information tied to Trump. The New York Times published its first of several articles revealing Trump's tax information in September 2020.

41.    But the unauthorized disclosures did not end there. In July and August 2020, Littlejohn expanded his scheme and searched for historic tax data on the nation's wealthiest taxpayers. Littlejohn ran a query designed to pull data spanning over 15 years and relating to thousands of American taxpayers. Using the same method he previously employed, Littlejohn uploaded the data to a private website and then downloaded it to his personal computer.

42.    Around September 2020, Littlejohn contacted ProPublica and offered to provide it with the confidential tax returns and return information of thousands of taxpayers. ProPublica is an "independent, nonprofit newsroom that produces investigative journalism."[34] It has "a team of more than 150 dedicated journalists" and "covers a range of topics including government and politics, business, criminal justice, the environment, education, health care, immigration, and technology."[35]

43.    Shortly thereafter, Littlejohn mailed ProPublica a password-protected storage device that contained the stolen data. In November 2020, Littlejohn provided the password, granting ProPublica full access to the data. Littlejohn disclosed the stolen information to ProPublica hoping that it would widely publish the information. And it did: thus far ProPublica has published nearly 50 articles based on the disclosed returns and return information of thousands of taxpayers.

44.    Throughout this time, Littlejohn was authorized by both the IRS and Booz Allen to access unmasked taxpayer data, including tax returns and return information, on IRS databases. Defendants willingly allowed Littlejohn to repeatedly inspect and disclose the confidential tax return information of thousands of taxpayers. On information and belief, Littlejohn extracted and

---

[34] *About Us*, ProPublica, https://www.propublica.org/about/ (last visited Jan. 21, 2025).
[35] *Id.*

inspected the tax data at least in part to benefit Booz Allen because Booz Allen requested that he perform Booz Allen's contracts with the IRS, and his work with IRS records reflected his ability and sophistication as an IT employee.

45.    In October 2023, Littlejohn pleaded guilty to unlawfully disclosing confidential tax returns and return information in violation of 26 U.S.C. § 7213(a). In his plea agreement, Littlejohn stated that he "was authorized, pursuant to 26 U.S.C. § 6103(n), to access vast amounts of unmasked taxpayer data, including taxpayer returns and return information, on IRS databases."[36]

## V.    The IRS sends notification letters to thousands of taxpayers, alerting them of the unauthorized inspections or disclosures of their tax return or return information.

46.    Although several high-profile individuals were named in the New York Times and ProPublica articles, most taxpayers affected by the Littlejohn leak were unaware that their confidential tax returns and return information had been compromised.

47.    In April 2024, the IRS began informing over 70,000 individuals and entities that they were impacted by Littlejohn's criminal conduct. The IRS mailed these impacted taxpayers short victim notification letters ("IRS Letter 6613-A") outlining Littlejohn's conduct. The following month, the IRS issued a public statement that clarified its procedures:

> The data set that the IRS received at that point is voluminous and complex, and the IRS has been working with TIGTA to process and analyze this data, including to more fully understand what information, pertaining to what taxpayers, was unlawfully disclosed by Mr. Littlejohn. We are doing this so that we can provide taxpayers with notice of the incident as Section 7431 of the Internal Revenue Code requires, and so that we can take whatever additional steps are warranted to address taxpayer inquiries, interests, and concerns. This has taken some time, which is why we may need to follow up with you through additional correspondence.[37]

---

[36] *United States v. Littlejohn*, 1:23-cr-343 (D.D.C.), ECF No. 9 ¶ 3.
[37] *IRS Communication on Data Disclosure*, IRS (May 10, 2024), https://www.irs.gov /newsroom/irs-communication-on-data-disclosure.

48.     The IRS provided limited information about the disclosures, noting only that if taxpayers had received the letter, "it [was the IRS's] understanding that Mr. Littlejohn unlawfully disclosed information corresponding to [their] taxpayer identification number maintained on an IRS database."[38] But the IRS made clear that it did "not know—at least not at [that] point—the full scope of the specific information that Mr. Littlejohn unlawfully disclosed," noting that "a broad set of taxpayer information is maintained in this database."[39]

49.     In December 2024, the IRS issued a second wave of notification letters to newly identified victims, including Alarm Concepts, under the title "IRS Notice CP118." These letters largely echoed the content of IRS Letter 6613-A but added some new detail. The letter described the information disclosed as "narrow in scope."[40] Yet the IRS also admitted that the disclosed information included confidential "information returns (e.g., Forms 1099, Schedule K-1, etc.) issued by [the recipient] to a taxpayer, including issuer/recipient Taxpayer Identification Numbers, (Social Security Number (SSN) and Employer Identification Number (EIN)), name, address, and other information from the information returns."[41] On information and belief, the IRS sent the IRS Notice CP118 to (or is in the process of sending it to) hundreds of thousands of taxpayers.

50.     Alarm Concepts received IRS Notice CP118 in mid-December 2024. Before receiving the notice, Alarm Concepts did not know that its confidential tax returns and return information had been inspected or disclosed.

51.     The scope and scale of Littlejohn's unlawful disclosures appear to be unprecedented in IRS history. No prior case has involved the unauthorized disclosure of tax returns

---

[38] *Id.*
[39] *Id.*
[40] Ex. A.
[41] *Id.*

and return information linked to thousands, much less hundreds of thousands, of individuals and entities. The impact has been profound: many victims have expressed anger, embarrassment, and frustration over the exposure of their confidential personal information and the attendant risk of fraud and other economic injury, reputational harm, and loss of privacy resulting from misuse of that information. Indeed, the disclosure of Alarm Concepts' and class members' confidential tax information to news organizations, standing alone, constitutes a massive breach of their privacy.

52.    And as the government has recognized, the harm shows no signs of stopping. ProPublica has continued to publish stories using the disclosed data, even after Littlejohn entered a guilty plea. Alarm Concepts and other victims whose information has been disclosed to a news organization rightly fear that their private, confidential tax information could surface in the news at any time or could be disclosed to other news organizations. Further, Plaintiff and class members are subject to the risk that their confidential tax information—which was disclosed without authorization by a now-convicted IRS employee—is now in the hands of other cybercriminals who may use that information to commit further crimes, such as identity theft, blackmail, or other fraud. The injury arising from Defendants' unlawful disclosures is extensive and ongoing.

## CLASS ACTION ALLEGATIONS

53.    Under Federal Rule of Civil Procedure 23(a) and (b)(3), Alarm Concepts asserts a claim on behalf of itself and the following proposed class:

> All persons or entities in the United States who received or will receive notice from the IRS informing them that an IRS "contractor has been charged with the unauthorized inspection or disclosure of [their] tax return or return information, between 2018 and 2020."

54.    The proposed class expressly excludes Defendants; any of the Defendants' officers, directors, employees, parent companies, subsidiaries, and affiliates; all other governmental entities; Plaintiffs' counsel; the judicial officers presiding over this action and their immediate

family members and judicial staff; members of the jury in this matter, and any taxpayer who would otherwise meet the class definition but who has already settled and released a claim under 26 U.S.C. § 7431(a) against Defendants.

55.     This action satisfies all the relevant requirements of Rule 23(a) and (b).

56.     The class is so numerous that joinder of all members is impracticable. Alarm Concepts reasonably believes that the members of the class number in the tens or hundreds of thousands. The precise number of class members and their identities are unknown to Alarm Concepts at this time but may be determined through discovery of Defendants' records. Members of the class may be notified of the pendency of this action directly by mail using the information contained in Defendants' records, including records of distribution of the IRS's taxpayer notices.

57.     Common questions of law and fact exist as to all members of the class and predominate over questions affecting only individual class members. Common legal and factual questions include but are not limited to whether Littlejohn was an employee of the IRS and Booz Allen; whether the IRS and Treasury Department violated 26 U.S.C. §§ 6301(a)(1) and 7431(a)(1); whether Booz Allen violated 26 U.S.C. §§ 6301(a)(3) and 7431(a)(2); and whether class members are entitled to damages. These and other common questions of law or fact predominate over any questions affecting only individual class members. Alarm Concepts can prove the elements of its claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

58.     Alarm Concepts' claim is typical of the claims of the class because Alarm Concepts, like all other class members, had its tax returns or return information disclosed by Littlejohn without authorization. Alarm Concepts and class members were injured by the same unlawful conduct.

59.     Alarm Concepts is an adequate representative of the class because its interests do not conflict with the interests of the class members it seeks to represent, it has retained competent counsel experienced in prosecuting class actions, and it intends to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by Alarm Concepts and its counsel.

60.     The class mechanism is superior to other available means for the fair and efficient adjudication of the class members' claims. The damages suffered by each individual class member are relatively modest compared to the burden and expense of individual litigation. Thus, in the absence of a class action, it would not be feasible for members of the class to seek redress for the statutory violations alleged in the complaint. Individual litigation would also overload court dockets and present a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**CLAIMS FOR RELIEF**

**Count I**
**Violation of 26 U.S.C. §§ 6103(a)(1) and 7431(a)(1)**
*(On behalf of Alarm Concepts and the proposed class*
*against the IRS and U.S. Department of the Treasury)*

61.     Alarm Concepts repeats and realleges paragraphs 1 through 60.

62.     26 U.S.C. § 6103 mandates that that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States officers and employees, except as specifically authorized by the statute.

63.     IRM § 10.5.5.1.6(2) defines "[e]mployee" as "all IRS personnel," including "all contractors who have staff-like access."

64.     IRM § 10.5.5.1.6(3) defines "staff-like access" to mean "when a contracted individual is granted access to IRS facilities or IRS systems, or has opportunity to be exposed to IRS information."

65.     "Return" is defined as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1).

66.     "Return information" includes "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A).

67.     "[D]isclosure" means "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8). "Inspection" means "any examination of a return or return information." *Id.* § 6103(b)(7).

68.     26 U.S.C. § 7431(a)(1) provides taxpayers a private cause of action for damages against the United States "[if] any officer or employee of the United States knowingly, or by reason

of negligence, inspects or discloses any return or return information" in violation of 26 U.S.C. § 6103.

69.     As alleged herein, the IRS and Treasury Department, through IRS employee Littlejohn, repeatedly violated 26 U.S.C. § 6103 from as early as 2018 through at least November 2020 by unlawfully inspecting Alarm Concepts' and class members' confidential tax returns and return information and/or unlawfully disclosing that information to third parties including ProPublica.

70.     These unlawful disclosures or inspections were made knowingly, or at the very least negligently or with gross negligence. Indeed, the disclosures and inspections were made while the IRS and Treasury Department willfully failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Alarm Concepts' and class members' confidential taxpayer information from the unlawful disclosures. Moreover, on information and belief, Littlejohn knowingly disclosed the confidential return information to at least ProPublica and did so with the intent that ProPublica would widely publish the information through its website or other means.

71.     These inspections or disclosures did not result from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. § 7431(b), but rather from knowing violations, gross negligence, and/or negligence.

72.     These inspections or disclosures were not "requested by" Alarm Concepts or class members under 26 U.S.C. § 7431(b)(2).

73.     The inspections or disclosures of Alarm Concepts' and class members' tax returns and return information therefore violated 26 U.S.C. § 6103.

74.     As a result of the violations, Alarm Concepts and class members suffered an injury including but not limited to the dissemination of their confidential tax returns and return information to unauthorized third parties, which invaded their privacy. Alarm Concepts' and class members' tax returns and return information are, and are entitled to be, private. And their tax returns and return information are matters the disclosure of which is highly offensive to a reasonable person, and that are not of legitimate concern to the public.

75.     Alarm Concepts and class members are entitled to statutory damages of $1,000 for each unauthorized inspection or disclosure under 26 U.S.C. § 7413(c)(1)(A).

76.     Alarm Concepts and class members are also entitled to punitive damages under 26 U.S.C. § 7431(c)(1)(B)(ii) because the unlawful inspections or disclosures of their confidential tax return information was either willful or the result of gross negligence.

77.     Alarm Concepts is entitled to the costs of the action and reasonable attorney fees under 26 U.S.C. § 7431(c).

**Count II**
**Violation of 26 U.S.C. §§ 6103(a)(3) and 7431(a)(2)**
*(On behalf of Alarm Concepts and the proposed class*
*against Booz Allen)*

78.     Alarm Concepts repeats and realleges paragraphs 1 through 60 and 65 through 67.

79.     26 U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and applies to any "other person (or officer or employee thereof) who has or had access to returns or return information under . . . subsection (n)." 26 U.S.C. § 6103(a)(3).

80.     26 U.S.C. § 6103(n) permits the disclosure of returns and return information to any person "to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair,

testing, and procurement of equipment, and the providing of other services, for purposes of tax administration."

81.    Booz Allen is a "person . . . who has or had access to [the] returns or return information" of Alarm Concepts and class members under 26 U.S.C. § 6103(n) because the Secretary of the Treasury, pursuant to regulations prescribed by the Secretary, disclosed their tax returns and return information to Booz Allen "to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration." 26 U.S.C. § 6103(n).

82.    Under 26 U.S.C. § 6103(a), no such person who has received tax returns or return information "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." 26 U.S.C. § 6103(a).

83.    26 U.S.C. § 7431 provides taxpayers a private right of action for damages against any person who is not an officer or employee of the United States for the knowing or negligent unauthorized inspection or disclosure of tax return information in violation of 26 U.S.C. § 6103.

84.    On information and belief, Booz Allen, both through its own actions and through its employee, Littlejohn, repeatedly violated 26 U.S.C. § 6103 from 2018 to 2020 by inspecting Alarm Concepts' and class members' confidential tax returns and return information, and/or unlawfully disclosing that data to third parties including ProPublica.

85.    Booz Allen made these unlawful inspections and disclosures knowingly, or at the very least negligently, including because the inspections and disclosures were made while willfully or negligently failing to establish appropriate administrative, technical, and physical safeguards to

ensure the security and confidentiality of Alarm Concepts' and class members' confidential taxpayer information from the unlawful inspections and disclosures alleged in this complaint. Booz Allen's status as a global leader in cybersecurity technology coupled with its history of high-profile data breaches by its own employees put Booz Allen on notice that a breach of the type committed by Littlejohn was likely to reoccur. Moreover, the inspections and disclosures were made while Booz Allen willfully failed to adequately supervise the activities of its employees, including Littlejohn.

86.     Booz Allen, both through its own actions and through Littlejohn, unlawfully inspected and disclosed Alarm Concepts' and class members' tax returns and return information using Booz Allen's computers and network access to IRS systems and databases. The unlawful inspections and disclosures were made within the scope of Littlejohn's employment at Booz Allen.

87.     Booz Allen, both through its own actions and through its employee, Littlejohn, caused the disclosure of the confidential return information to third parties including ProPublica with the intent that either or both news organizations would widely publish the information through their websites or through other means.

88.     Booz Allen's inspections and disclosures of Alarm Concepts' and class members' tax returns and return information did not result from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. § 7431(b)(1), but rather from knowing violations, gross negligence, and/or negligence.

89.     Booz Allen's inspections and disclosures of Alarm Concepts' and class members' tax returns and return information were not "requested by the taxpayer" under 26 U.S.C. § 7431(b)(2).

90.    Under 26 U.S.C. § 7431(c), Alarm Concepts and class members are entitled to statutory damages in the amount of $1,000 for each act of unauthorized inspection and disclosure.

91.    Alarm Concepts is entitled to the costs of the action and reasonable attorney fees under 26 U.S.C. § 7431(c).

## PRAYER FOR RELIEF

Alarm Concepts respectfully requests that the Court:

a.  Certify this case as a class action under Rule 23(a) and (b)(3), designate Alarm Concepts as class representative, and appoint its attorneys as class counsel;

b.  Declare that Defendants willfully, knowingly, and/or by gross negligence, unlawfully disclosed Alarm Concepts' and class members' confidential tax returns or return information in violation of 26 U.S.C. § 6103;

c.  Declare that Defendants willfully, knowingly, and/or by gross negligence, unlawfully inspected Alarm Concepts' and class members' confidential tax returns or return information in violation of 26 U.S.C. § 6103;

d.  Award Alarm Concepts and class members $1,000 in damages for each unauthorized inspection or disclosure of their tax return or return information under 26 U.S.C. § 7431(c).

e.  Award reasonable attorney fees and costs;

f.  Award pre- and post-judgment interest as allowed by law;

g.  Grant any further relief that the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Alarm Concepts demands a jury trial on all issues that are so triable.


Dated: January 23, 2025                     Respectfully submitted,



                                            /s/_____
                                            Veronica Byam Nannis, No. 15679
                                            **JOSEPH, GREENWALD & LAAKE, P.A.**
                                            6404 Ivy Lane, Ste. 400
                                            Greenbelt, Maryland 20770
                                            Tel: (240) 553-1209
                                            vnannis@jgllaw.com

                                            Norman E. Siegel* (Missouri Bar No. 44378)
                                            Barrett J. Vahle* (Missouri Bar No. 56674)
                                            Joy D. Merklen* (Missouri Bar No. 77069)
                                            **STUEVE SIEGEL HANSON LLP**
                                            460 Nichols Road, Suite 200
                                            Kansas City, Missouri 64112
                                            Tel: (816) 714-7100
                                            siegel@stuevesiegel.com
                                            vahle@stuevesiegel.com
                                            merklen@stuevesiegel.com

                                            Bruce W. Steckler (Texas Bar No. 00785039)
                                            **STECKLER WAYNE
                                            & LOVE, PLLC**
                                            12720 Hillcrest, Suite 1045
                                            Dallas, Texas 75230
                                            Tel: (972) 387-4040
                                            bruce@swclaw.com

                                            John A. Yanchunis (Texas Bar No. 22121300)
                                            **MORGAN & MORGAN
                                            COMPLEX LITIGATION**
                                            201 N. Franklin St., 7th Floor
                                            Tampa, Florida 33602
                                            Tel: (813) 275-5272
                                            jyanchunis@forthepeople.com


                                            *Counsel for Plaintiff and the Proposed Class*

26

*Pro hac vice forthcoming*